Robert A. **TOWNE**, Cynthia J. Towne, and Towne–Murphy, Inc., Plaintiffs,

v.

Anthony **ROBBINS**, Becky Robbins, Robbins, Robbins Research International, Inc., Anthony Robbins & Associates, Inc., The Anthony Robbins Companies, Brad N. Hunsaker, and Sam Georges, Defendants.

No. 02–1688–MO.

United States District Court, D. Oregon.

Sept. 7, 2004.

C. Thomas Wesner, Jr., Wesner Coke & Clymer, P.C., Dallas, TX, and J. William Savage, Rieke & Savage PC, Portland, OR, for Plaintiffs.

Daniel J. Friedman, Daniel G. Murphy and Peter S. Selvin, Loeb & Loeb, LLP, Los Angeles, CA, Keith S. Dubanevich and Robert C. Weaver, Jr., Garvey Schubert & Barer, Portland, OR, for Defendants.

## OPINION AND ORDER

MOSMAN, District Judge.

Plaintiffs Robert A. Towne and Cynthia J. Towne, husband and wife, along with their company Towne–Murphy, (collectively, "the Townes") contend they were swindled by well-known motivational speaker Anthony Robbins and his companies. Plaintiffs contend Robbins duped them into entering into a franchise agreement.

Only one narrow issue stands ready for decision: whether plaintiffs' Oregon Franchise Act claim fails as a matter of law because it is time-barred under the Act's limitations provision. As discussed below, the court answers that issue in defendants' favor, insofar as plaintiffs' claim is based on the 1991 agreement and 1996 renewal.[1]

### I.

This is a sprawling dispute between franchisees and franchisors. The court briefly touches on only those facts helpful to provide background for resolution of the single issue presented.

Anthony Robbins has created an empire selling motivational books and tapes and conducting "life skills" seminars. In the early 1990s, he decided to franchise his operations. The Townes, allegedly encouraged by Robbins' promises of wealth and a better life, quit their jobs and signed up as franchisees to promote Robbins' books and seminars in the Portland area. The Townes signed the initial franchise agreement with defendant Robbins Research Institute, Inc., sometime in July 1991. Five years later, in July 1996, the Townes renewed the franchise agreement. On July 18, 2001, plaintiffs allege they again renewed the agreement.

According to plaintiffs, there is nothing ordinary about the franchisor-franchisee relationship between plaintiffs and Robbins. Plaintiffs identify a number of falsehoods Robbins allegedly told to induce them to sign and continue the franchise agreement. For instance, plaintiffs allege Robbins falsely told them that earlier franchise failures were completely the fault of the franchisees due to their refusal to follow Robbins' failsafe techniques.

---

1. Defendants had raised a second issue: whether plaintiffs' Oregon Racketeer Influenced and Corrupt Organization ("ORICO") claim fails as a matter of law. Defendants have withdrawn their summary judgment on that issue; the court, therefore, will not at this time decide whether plaintiffs have a viable ORICO claim.

Plaintiffs developed a close relationship of trust with Robbins, according to plaintiffs, and even at some point walked barefoot over hot coals pursuant to Robbins' hypnotic pleas. In plaintiffs' words, they were subjected to Robbins' unlicensed practice of various "quack" therapies. They contend they were unable to appreciate the crooked nature of Robbins' franchising operations until the precise date August 30, 2002 (although they do not specifically explain why they were unable to discover defendants' alleged misdeeds until that date).

In a 102–page complaint, plaintiffs allege several claims. On June 10, 2004, defendants filed a motion for partial summary judgment, arguing plaintiffs' claim brought under the Oregon Franchise Act is barred by the Act's three-year limitations period.

## II.

The Oregon Franchise Act permits franchisees to sue the seller of a franchise if the seller (a) employed any device, scheme, or artifice to defraud; or (b) made any untrue statement of a material fact or omitted to state a material fact necessary in order to make the statements affirmatively made not misleading. ORS 650.020(1). Pertinent to the instant dispute, a claim cannot be brought under the Act "more than three years after the sale" of the franchise. ORS 650.020(6). The Act defines the term "sale": it includes every contract to sell a franchise, or disposition of a franchise or interest in a franchise for value; the term does not include the renewal or extension of an existing franchise without any material change in the terms thereof if there is no interruption in the operation of the franchised business by the franchisee. ORS 650.005(8).

As mentioned, the plaintiffs here originally entered into a franchise agreement with defendants in July 1991, eleven years before plaintiffs filed this lawsuit. Plaintiffs agreed to a renewal of the agreement in July 1996, more than three years before plaintiffs filed this lawsuit. Thus, even if the 1996 renewal included a "material change in the terms" of the original franchise agreement, thereby making the renewal a "sale" (see ORS 650.005(8)), strictly applying the Act's three-year limitations period would bar any claim based on the renewal. To avoid the ineluctable conclusion that the 1991 agreement and 1996 renewal were consummated beyond three years of the filing of this lawsuit, plaintiffs invoke essentially a discovery-rule analysis, as they contend they did not become aware of defendants' misconduct until August 2002. As discussed below, the court rejects plaintiffs' attempt to sidestep the Franchise Act's limitations provision.

The Franchise Act's limitations period is stated in absolute terms, requiring that a claim be brought within "three years after the sale" of the franchise. ORS 650.020(6). Thus, unlike other Oregon statutes of limitations, the Franchise Act does not set forth a discovery rule. Compare, e.g., ORS 12.110 (providing that fraud claims must be brought within two years "from the discovery of the fraud or deceit"); ORS 646.471 (providing that trade-secrets claim must be brought within "three years after the misappropriation [of trade secrets] is discovered or by the exercise of reasonable diligence should have been discovered").

The Oregon Supreme Court has cautioned against grafting discovery rules onto limitations statutes which are silent on the issue. For example, in *Gladhart v. Oregon Vineyard Supply Co.*, 332 Or. 226, 229, 26 P.3d 817 (2001), the court held that the products-liability statute of limitations did not provide for a discovery rule, thus making it inappropriate for a court to read such a rule into the statute. The statute

of limitations at issue in *Gladhart* provided that a products-liability claim had to be " 'commenced not later than two years after the date on which the death, injury or damage complained of occurs.' " *Id.* at 231, 26 P.3d 817 (quoting ORS 30.905(2)). The court of appeals had found the action "timely because plaintiffs' injury did not 'occur' until plaintiffs discovered the injury." *Id.* at 229, 26 P.3d 817. Overturning the court of appeals, the supreme court emphasized: " 'A discovery rule cannot be assumed, but must be found in the statute of limitations itself.' Whether the statute contains a discovery rule is a matter of legislative intent." *Id.* at 230, 26 P.3d 817 (quoting *Huff v. Great Western Seed Co.*, 322 Or. 457, 462, 909 P.2d 858 (1996)). The "legislature did not use the words 'discover' or 'discovery' to describe when the two-year limitation period begins to run," nor did the legislature use the word "accrued." *Id.* at 231, 26 P.3d 817. The court, therefore, concluded:

> The legislature's failure to use those words or make any apparent reference to the discovery of the injury in the text of the statute suggests that the legislature did not intend to place a discovery rule in ORS 30.905(2).... [W]hen the legislature intends to condition the commencement of a limitation period on the discovery of the harm, it knows how to express that intention.

*Id.* at 231, 233, 26 P.3d 817.

The court finds the analysis in *Gladhart* controlling. The Franchise Act does not use the terms "discover," "discovery," "tolling," or "accrue." Nor is there any other language revealing a legislative intent to create a discovery rule. Instead, the legislature chose to measure the limitations period from a definite, discrete event—the "sale" of the franchise. The fact plaintiffs may not have discovered their cause of action until August 30, 2002, is irrelevant.

Although no Oregon court has construed the Oregon Franchise Act's limitations provision, at least one out-of-state court applying Oregon law has held that the Act's limitations provision does not leave room for application of a discovery rule. See *Carlock v. The Pillsbury Co.*, No. 4–87–517, 1988 WL 404839, at *9–10 (D.Minn. Oct.13, 1988) (rejecting argument limitations period under the Oregon Act could be measured from discovery of "defendants' continuing fraud," because the "plain language of section 650.020[6] does not mention tolling nor condition the limitations period on discovery of the actionable fraud"). The court finds the statutory analysis in *Carlock* persuasive.

Plaintiffs' characterization of their defense as one based on "equitable estoppel" does not change the result. The gist of plaintiffs' argument remains they did not discover defendants' wrongful conduct until August 2002. As plaintiffs point out, under Oregon law, a special relationship between the parties may give rise to a duty to inform a party he or she has a cause of action. See *Philpott v. A.H. Robins Co.*, 710 F.2d 1422, 1425 (9th Cir.1983) (applying Oregon law). Plaintiffs also are correct that under certain "exceptional" circumstances a special relationship may exist between a franchisor and franchisee. See *Norwood v. Atlantic Richfield Co.*, 814 F.Supp. 1459, 1467 (D.Or.1991). But, in enacting the Oregon Franchise Act, the legislature specifically determined that limitations should run from the occurrence of a specific event. Absent more direct guidance from the Oregon legislature or courts, it would be inappropriate for this court to apply equitable tolling or discovery principles in the face of the Oregon Franchise Act's unequivocal language.

In rejecting plaintiffs' argument, the court also emphasizes that the Oregon leg-

islature specifically preserved franchisees' rights under the common law:

> Nothing in [the Franchise Act] limits any statutory or common-law rights of a person to bring an action in any court for an act involved in the sale of franchises, or the right of the state to punish a person for a violation of any law.

ORS 650.085. The Franchise Act's preservation of plaintiffs' right to pursue common law claims, such as those based in fraud—for which a discovery rule would apply (see ORS 12.110)—serves to underscore the legislature's intent to create an absolute statute of limitations. It only makes sense to presume the legislature intended to make a distinction in terms of limitations between the statutory claim and a common law fraud claim. Accepting plaintiffs' argument essentially would equate the Franchise Act's limitations provision with that governing common law fraud claims, thereby rendering the Act's plain language meaningless.

Thus, as briefly outlined above, the court holds that plaintiffs cannot assert an Oregon Franchise Act claim based on the 1991 agreement or 1996 renewal of that agreement.

However, plaintiffs also allege that the 2001 renewal's terms resulted in a "material change" of the original franchise agreement, thus constituting a "sale" under the Franchise Act. See ORS 650.005(8). As a result, plaintiffs suggest, the Act's limitations period began anew when the parties agreed to the 2001 renewal. See ORS 650.020(1) (providing that claim must be brought within three years of "sale" of franchise).

The court will not now decide whether the 2001 renewal constituted a "material change" and thus a "sale." While plaintiffs do not put forth any probative evidence on this point, plaintiffs allege that defendants' motion for summary judgment is premature and defendants failed to comply with the Local Rules' meet-and-confer requirement—allegations to which defendants do not at all respond. Although it is not clear how further discovery could benefit plaintiffs' ability to show a material change in the franchise as a result of the 2001 renewal, the court will give plaintiffs the benefit of the doubt at this time, in light of defendants' failure to comply with the meet-and-confer requirement. The court gives plaintiffs two weeks from the date of this order to show that the 2001 renewal qualifies as a "sale" under the Franchise Act. The court emphasizes, however, that plaintiffs should raise this issue only if there is supporting probative evidence. Should plaintiffs fail to present such evidence on this issue, the court will enter summary judgment against any Franchise Act claim based on the 2001 renewal.

## III.

For the reasons outlined above, the court GRANTS defendants' motion for partial summary judgment, insofar as the motion is aimed at plaintiffs' Franchise Act claim based on the 1991 agreement and 1996 renewal. (Doc. # 91). The court, however, grants plaintiffs two weeks from the date of this order to raise the issue of the 2001 renewal, which they should do only if there is probative evidence showing the renewal constituted a "material change" to the franchise. If plaintiff raises the issue, defendants shall have one week to respond. If plaintiff fails to present probative evidence, summary judgment will be entered against the 2001 renewal as well.

The court denies defendants' request for attorney fees, but this issue may be revisited should plaintiffs raise the issue of the 2001 renewal. The court also DENIES

AS MOOT plaintiffs' motion to strike (doc. # 130).

IT IS SO ORDERED.